IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **ROBERT LESTER CREASY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **3:12-cv-1698-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Robert Lester Creasy ("Creasy") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits to Creasy.

### I. Procedural History

Creasy protectively filed applications for Disability Insurance Benefits and

Supplemental Security Income benefits on November 13, 2009, alleging a disability onset date of November 10, 2009, due to back and hip pain, depression, and anxiety. (R. 17, 118-129, 136, 180, 183). After the SSA denied his applications, Creasy requested a hearing before an ALJ. (R. 58-59, 70-71). The ALJ subsequently denied Creasy's claims, which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6, 14). Creasy then filed this action for judicial review pursuant to § 205(g) and § 1631(c)(3) of the Act, 42 U.S.C. § 405(g) and § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable

and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied]

when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

### IV.  The ALJ's Decision

Turning now to the ALJ's decision, the court notes initially that the ALJ properly applied the five step analysis.  The ALJ first determined that Creasy had not engaged in substantial gainful activity since November 10, 2009, and therefore met Step One.  (R. 19).  Next, the ALJ acknowledged that Creasy's severe impairment of "lumbar degenerative disc disease" met Step Two.  *Id*.  The ALJ then proceeded to the next step and, after considering Creasy's severe and non-severe impairments in combination, found that Creasy failed to meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 and thus

did not satisfy Step Three. (R. 20). Although he answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Creasy has the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to simple unskilled work in a low stress environment with infrequent changes with gradual introduction. The claimant is able to make simple work related decisions. The claimant can occasional[ly] climb ramps and stairs, balance, stoop, kneel, crouch, and reach overhead. For safety reasons, the claimant is restricted from climbing ropes, ladders, and scaffolds, and no work around unprotected heights or dangerous machinery.

(R. 20-21). The ALJ, therefore, determined that Creasy is unable to perform any past relevant work. (R. 23). With respect to the pain standard, the ALJ found that Creasy is "mostly credible regarding his allegation of back and hip problems and the claimant has a condition which can reasonably cause some limitations due to pain," but that "the medical evidence does not support the severity of the claimant's limitations." (R. 23). As a result, the ALJ proceeded to Step Five where he considered Creasy's age, education, work experience, and RFC and determined that "there are jobs that exist in significant numbers in the national economy that [Creasy] can perform." (R. 24). Consequently, the ALJ found that Creasy is not disabled. (R. 25); *see also McDaniel*, 800 F.2d at 1030.

V.  Analysis

Creasy disagrees with the ALJ's decision and requests that this court enter "judgment for such relief as may be proper."  Doc. 1 at 2.  Unfortunately for Creasy, as shown below, substantial evidence supports the ALJ's decision.

A.     *Severe vs. Non-Severe Impairments*

Again, Creasy alleges disability because of back and hip pain, depression, and anxiety.  (R. 136, 180, 183).  The ALJ determined that Creasy's lumbar degenerative disc disease, or back pain, is "severe" under 20 C.F.R. §§ 404.1520(c) and 416.920(c), but made no determination regarding Creasy's hip pain.  (R. 19).  Presumably Creasy contends that the ALJ erred in failing to find his hip pain a severe impairment.  Based on a review of the record, even assuming that the ALJ considered the hip ailment as non-severe, the court finds no error in that finding.  In reaching this conclusion, the court notes that Creasy failed to present sufficient evidence to the ALJ to support his claim.  For example, the only information in the record regarding Creasy's hip pain is an Eliza Coffee Memorial Hospital Emergency Care Center sign-in form where Creasy reported back, leg, and hip pain on May 14, 2010.  (R. 246).  However, the treating physician noted that Creasy complained only of back pain and discharged Creasy with only a back pain diagnosis.  (R. 242, 243).  Therefore, the record fails to support Creasy's

allegation of disabling hip pain.

Unlike the back pain, the ALJ found that Creasy's other impairments – depression and anxiety – are non-severe impairments because they do not "cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (R. 19, 20). The court also finds no error in this finding. The ALJ reached this determination after considering non-examining consulting physician Dr. Gloria Roque's and examining psychologist Dr. Bonnie Atkinson's opinions to evaluate the four functional areas set out in paragraph B of the Listings for mental disorders. (R. 192, 197; 20 C.F.R., Part 404, Subpt. P., Appendix 1). Based on the evidence, the ALJ found that Creasy has only mild limitations in his activities of daily living because he cooks, cleans his house, drives, and shops. (R. 20, 149, 191-192, 207). The ALJ considered next Creasy's social functioning and also determined that Creasy has only mild limitations because he socializes with friends and is the care-giver for his eleven year old son. (R. 20, 149, 188, 189, 191). The ALJ continued his analysis and also determined that Creasy has mild limitations in concentration, persistence, and pace because Dr. Atkinson opined that Creasy has normal concentration, can follow simple commands, and complete tasks, as evidenced by Creasy's semi-skilled past relevant work as a handy man. (R. 20, 48, 190, 192, 207). Finally, the ALJ determined that Creasy has not

experienced any episodes of decompensation. (R. 20, 191, 207), which is consistent with evidence that Creasy denied any hospitalizations due to mental impairments. (R. 189). The court finds that the medical record supports the ALJ's finding that Creasy's mental impairments pose only mild limitations and are non-severe impairments.

B.   *Residual Functional Capacity to Perform Light Work*

At Step Four, the ALJ properly applied a two-step process to determine (1) that Creasy has some impairments that could reasonably be expected to produce the alleged pain or other symptoms, but (2) that Creasy was not as limited as he asserted. (R. 21). Due to Creasy's physical and mental impairments, the ALJ determined that Creasy had the RFC to perform light work in a stress free environment with some physical limitations. (R. 21). However, the ALJ discredited Creasy's assertions regarding the severity of his impairments because the ALJ found them inconsistent with the objective medical evidence. (R. 22).

As the ALJ noted, examining consulting physician Dr. Brad Ginevan, non-examining consulting physician Dr. Robert Helipern, and treating physician Dr. Christopher Gay evaluated Creasy for back pain and their examinations and tests failed to support the pain Creasy alleges. Dr. Ginevan reported that Creasy had lumbar muscle and paraspinal spasms, normal gait and heal/toe walk, decreased

range of motion, and the ability to squat and rise, and diagnosed Creasy with lumbago, peripheral neuropathy, and chronic pain. (R. 195-96). Dr. Helipern in turn determined that Creasy could occasionally lift twenty pounds, climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, frequently lift ten pounds, stand or walk approximately six hours in an eight hour day, sit six hours in an eight hour day, never climb ladders, ropes, or scaffolds, and can push and pull. (R. 218-19). Critically, Dr. Helipern considered Creasy's March 2010 x-ray, ordered by "Dr. Martin" who is not otherwise identified in the record, that revealed "severe disc space narrowing with vacuum phenomenon at L5-S1. Questionable postoperative change versus simply superimposition of bowel gas at L5," (R. 212), and opined that Creasy's allegations of pain were "mostly credible" and could "reasonably cause some limitations due to pain," but "not to the severity alleged." (R. 222).

    Nothing in the evaluations of Drs. Helipern and Ginevan support Creasy's claim that he has disabling pain. In fact, their findings are consistent with Creasy's May 2010 visit to the Coffee Memorial Hospital where Creasy reported that his back, leg, and hip pain prevented him from sleeping, but declined treatment. (R. 246). The treating physician noted that Creasy "did not want [an] injection or drugs" for his tender back and that Creasy was in stable condition

when discharged. (R. 242-45). This rejection of treatment supports the ALJ's finding that Creasy's back pain is not as severe as Creasy purports.

Moreover, Drs. Ginevan and Helipern's findings are consistent with the findings of Dr. Christopher Gay, Creasy's treating physician, who evaluated Creasy for low back pain and/or leg pain in 2010 and 2011. (R. 230-34). During Creasy's February 4, 2011 evaluation, Creasy received a lumbar spine x-ray that revealed stenosis and compromise at L4/5. (R. 235). An MRI of the lumbosacral spine later that year revealed "small to moderate L5-S1 disc herniation as minor of contact with the left S1 nerve within the spinal canal and contributes to moderate right and moderate to severe left foraminal stenosis. L4-5 disc bulging contributes to mild spinal canal, moderate right and moderate to severe left foraminal stenosis." (R. 249). Dr. Gay's treatment notes are otherwise illegible.

The ALJ also reviewed Creasy's objective tests regarding his back pain and adopted Dr. Helipern's opinion that Creasy's severe disc space narrowing would cause some limitations, "but not to the severity alleged." (R. 222). The ALJ acknowledged Creasy's MRI and x-rays are positive for moderate to severe stenosis, (R. 22, 23), but neglected to state specifically why the tests fail to establish Creasy's disability. However, the court finds this error harmless because, based on the record, the ALJ's decision is supported by substantial

evidence. Specifically, Creasy's activities of daily living – he cleans, cooks, drives, feeds his dogs, shops, walks to his mother's house, cares for his 11 year old son, and sits most of the day, (R. 39, 40, 41, 43, 150-52) – which the ALJ properly considered, belie Creasy's contention that his pain is disabling and supports the ALJ's finding that Creasy is capable of performing light work. Indeed, the record is replete with examples of daily activities that are inconsistent with a finding that Creasy's pain is of the severity that he alleges and provide ample support for the ALJ's decision that Creasy failed to meet the pain standard.

In short, based on a review of the record, the court finds no error with the ALJ's findings that Creasy has the RFC capacity to perform light work with the limitations prescribed. (R. 21). In reaching this conclusion, the court notes that Creasy failed to present sufficient evidence to the ALJ to support his claim and failed to file a brief with this court. Ultimately, Creasy has the burden of proving his claims, *see* 20 C.F.R. § 416.912(c), and failed to make the necessary showing. Therefore, the substantial evidence supports the ALJ's RFC determination.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Creasy is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the

Commissioner's final decision is **AFFIRMED**.

**DONE** the 26th day of December, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE